IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| DAVID GARY GLADDEN,<br><br>               Plaintiff,<br>  v.<br><br>MICHAEL BERRY, in his Individual and Official Capacity; and,<br>DAVID M. O'BRIEN, in his Individual and Official Capacity; CHARLES R. CHESANOW, in his Individual and Official Capacity; FREDERICK E. TILTON, in his Individual and Official Capacity; WILLIS M. SIMMONS, JR., in his Individual and Official Capacity; and, DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION ("FAA"); and JOHN DOES 1-10,<br><br>               Defendants. | Case No. 3:17-cv-00043-TMB<br><br><u>**ORDER OF DISMISSAL**</u> |

## I.    INTRODUCTION

For the reasons explained in greater detail below, the Court **DENIES** in part and **GRANTS** in part the Defendants' "Motion for Reconsideration of Orders at Dockets 13 and 19" found at docket 20, which asks the Court to not construe the motion to dismiss at docket 8 as a motion for summary judgment and to undo the striking of the filing at docket 16, respectively. The Court **GRANTS** Defendants' "Motion to Dismiss All Claims Against All Defendants" at docket 8, based on this Court lacking jurisdiction. The Court **DENIES** Plaintiff's "Motion To Deny Fonstad Representation of All of the Defendants" found at docket 23 and **GRANTS** his motion found at docket 25 asking the Court to extend the time for him to file a reply to Defendants' opposition to his motion at docket 23. Lastly, with the issuance of this order, the Court **GRANTS** the motion for expedited consideration at docket 28.

## II.     BACKGROUND

Plaintiff David Gary Gladden, proceeding *pro se*, brought multiple causes of action against Michael Berry, M.D., David O'Brien, M.D., Charles Chesanow, D.O., Frederick Tilton, M.D., Willis Simmons, Jr., M.D. ("FAA Doctors"), and the Department of Transportation, Federal Aviation Administration ("FAA")(collectively, "Defendants"), resulting from the denial of an Airman Medical Certificate Second Class under 14 C.F.R. § 67.207(a)(1). Gladden asserts claims against the FAA Doctors in their individual and official capacities, for improperly causing the FAA to deny him medical clearance. Gladden also alleges that he was denied due process and that the mental health standards set forth in 14 C.F.R. § 67.207(a)(1) were vague as applied. He seeks injunctive and declaratory relief, as well as monetary damages.[1]

On September 13, 2011, Charles Chesanow, D.O., Chief Psychiatrist, opined that Gladden had "repeated overt acts, indicating an unwillingness or inability to comply with safety standards or laws involving, among other things, traffic violations and felonies," rendering him ineligible for medical certification under 14 C.F.R. § 67.207(a)(1).[2]

On October 26, 2011, regional flight surgeon, Willis M. Simmons, M.D., denied Gladden a medical certificate based on having "a personality disorder that is severe enough to have

---

[1] Dkt. 3 (Gladden's First Amended Compl.) In light of Gladden's *pro se* status, the Court liberally construes Gladden's amended complaint. *See* 28 U.S.C. § 1654 (1982)(Litigants have a statutory right to self-representation in civil matters.); *Bounds v. Smith,* 430 U.S. 817, 823 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 579 (1974); *Johnson v. Avery,* 393 U.S. 483, 485 (1969); *Haines v. Kerner,* 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) (Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.).

[2] Dkt. 3 at 7 (referencing Dkt. 3-3 (Attachment 3)); Dkt. 3-3 at 2.

repeatedly manifested itself by overt acts." The denial directed Gladden to make any request for reconsideration to the Federal Air Surgeon within thirty days.[3]

On November 28, 2011, Gladden filed for reconsideration of medical certificate denial.[4]

On January 31, 2012, Dr. Chesanow denied Gladden's reconsideration. He noted Gladden had a "history of multiple arrests, including forcible entry, two charges of theft, failure to file a sales tax return, resisting and driving while his license was suspended or revoked, and driving while suspended and revoked (unlawful use of license). He appears to have four charges of driving without a license, three charges of resisting arrest, unlawful use of an operating license, several felony theft charges, as well as eight traffic violations." Chesanow offered to consider a clinical evaluation from a board-certified psychiatrist familiar with aviation standards. This decision acknowledged, "[w]hile Mr. Gladden presents an impressive legal argument focusing on the inapplicability and vagueness of our personality disorder standard, it does not, in my view, mitigate what I consider to be multiple overt acts."[5]

On Feb. 28, 2012, Federal Air Surgeon Frederick E. Tilton, M.D., denied Gladden's request for second-class airman medical certification because, "[t]he available medical evidence reveals a history of a personality disorder severe enough to have repeatedly manifested itself by overt acts." Tilton's decision also considered—and denied—special issuance of a medical certificate under 14 C.F.R. § 67.401 because Gladden's "medical condition precludes the safe performance of airman

---

[3] Dkt. 3 at 7 (referencing Dkt. 3-1 (Attachment 1)); Dkt. 3-1 at 1.

[4] Dkt. 3 at 7 (referencing Dkt. 3-2 (Attachment 2)); *see* Dkt. 3-2.

[5] Dkt. 3-3 at 1.

duties under any condition that could reasonably be prescribed." This decision directed that Gladden could appeal to the NTSB within sixty days of its service.[6]

On Mar. 15, 2012, Gladden petitioned NTSB for review.[7] On Mar. 22, 2012, NTSB accepted Gladden's petition for review pursuant to 49 U.S.C. § 44703(c).[8]

On Apr. 11, 2012, Dr. Tilton withdrew the Feb. 28, 2012 final denial letter and asked Gladden to provide a "clinical evaluation from a board-certified forensic psychiatrist familiar with aviation standards."[9] Gladden was advised that if he did not reply to the letter within sixty days of its service, his application for an airman medical certificate would be denied for failure to provide the required information.[10] On the same date, the Acting Administrator of FAA moved to dismiss Gladden's appeal to NTSB because Dr. Tilton withdrew his Feb. 28, 2012 denial.[11]

On Apr. 19, 2012, NTSB granted Defendants' motion to dismiss without prejudice to Gladden's right to submit a future petition for review of any final denial of his pending application for medical certification.[12]

On July 17, 2012, Gladden received a psychological exam from Steven Juergens, M.D. Dr. Juergens concluded, "I cannot state the a [sic] personality disorder is the cause of the 'overt acts' but I understand that the 'overt acts' are a manifestation of political beliefs. The closest

---

[6] Dkt. 3-4 at 1.

[7] *See* Dkt. 3-5.

[8] Dkt. 3-6 at 1.

[9] Dkt. 3-7 at 1.

[10] *Id.* at 1–2.

[11] Dkt. 3-8 at 1–2.

[12] Dkt. 8-1 at 1–2.

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 4 of 19

psychiatric diagnosis I can make is that Mr. Gladden has obsessive-compulsive personality traits but cannot make the diagnosis of a DSM-IV TR personality disorder."[13]

On Dec. 4, 2012, Dr. Tilton denied Gladden's airman medical certification, but determined Gladden may be granted an Authorization for Special Issuance (Authorization) of a second-class airman medical certificate under 14 C.F.R. § 67.401. To remain eligible for special issuance of medical certificates, Gladden was required, within forty-five days of the date of the Authorization, to engage a certified counseling psychologist and provide a letter stating that he/she agreed to evaluate Gladden, initiate insight-oriented behavioral therapy, and notify the FAA immediately if there was any evidence of behavioral instability or lack of compliance with therapy. Then, every three months (beginning no later than Mar. 2013) Gladden was required to provide a status report letter from the psychologist regarding Gladden's therapy progress and behavioral stability. As part of an initial report, the psychologist was required provide a complete copy of Gladden's medical file and document review of that file. No directions were included regarding what process Gladden should follow if he was aggrieved.[14]

On Dec. 7, 2012, Gladden asked for clarification from Dr. Tilton regarding what the repeatedly manifested overt acts were that gave rise to the determination that he had a personality disorder.[15]

---

[13] Dkt. 3-9 at 22.

[14] Dkt. 3-10.

[15] Dkt. 3-11 at 1.

On Dec. 13, 2012, Gladden applied for a new airman medical certificate pursuant to the Dec. 4, 2012 Authorization.[16]

On Jan. 9, 2013, in response to the Dec. 7, 2012 request for clarification, Dr. Tilton explained, "[y]our history includes multiple acts involving arrests (including forcible entry), charges of theft, failure to file sales tax returns, resisting arrest, driving with a suspended or revoked driver's license, unlawful use of an operating license, failure to pay court ordered child support, and traffic violations. The totality of these repeated conflicts with various civil requirements, rather than each individual event, suggest a pattern of behavioral instability that appears to repeatedly manifest in disregarding generally accepted rules for behavior." No directions were included regarding what process Gladden should follow if aggrieved.[17]

On Feb. 4, 2013, instead of appealing to the NTSB, Gladden petitioned the Ninth Circuit for review of the Dec. 4, 2012 and Jan. 9, 2013 Tilton decisions.[18]

On Mar. 13, 2013, Dr. Tilton withdrew the Dec. 4, 2012 authorization of a second-class airman medical certificate because Gladden did not provide a letter from a certified counseling psychologist. Gladden was directed to send a letter requesting reconsideration to the Federal Air Surgeon within sixty days.[19]

---

[16] Dkt. 8-6 at 1.

[17] Dkt. 3-13.

[18] Dkt. 8-2 at 1–17.

[19] Dkt. 3-14 at 1–2.

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 6 of 19

On Apr. 29, 2013, instead of requesting reconsideration of Tilton's Mar. 13, 2013 decision, Gladden filed an emergency motion to vacate this decision in his Ninth Circuit case.[20]

On May 29, 2013, the Ninth Circuit dismissed Gladden's petition for review of the Dec. 4, 2012 and Jan. 9, 2013 Tilton decisions for lack of jurisdiction since a final order had not yet been issued.[21] Gladden's April 29, 2013 emergency motion to vacate Tilton's March 13, 2013 decision was denied as beyond the scope of Gladden's Feb. 4, 2013 petition for review, which sought review of Tilton's Dec. 4, 2012 and Jan. 9, 2013 decisions.[22]

On Dec. 2, 2013, Gladden petitioned the Ninth Circuit for review of Tilton's Mar. 13, 2013 decision instead of requesting reconsideration to the Federal Air Surgeon or appealing to the NTSB. Gladden alleged the "'repeated overt acts' referenced are NOT within the Authority of the FAA 14 CFR regulations Sections 67.1 07(a)(l), 67.207(a)(l), and 67.307(a)(l) of Title 14, Code of Federal Regulations, (14 CFR) Part 67."[23]

On Jan. 7, 2014, Dr. Tilton denied the Dec. 13, 2012 application because Gladden did not provide additional medical information as required by the Dec. 4, 2012 Authorization and requested by Tilton in a letter dated July 22, 2013. The Decision provided that Gladden may appeal to the NTSB within sixty days of its service.[24]

---

[20] Dkt. 8-3 at 1.

[21] *Id.* (citing to 49 U.S.C. § 46110(a); *Americopters, LLC v. FAA*, 441 F.3d 726, 732 (9th Cir. 2006) (court of appeals has jurisdiction to review final orders of the FAA)).

[22] *Id.*; *see also* Dkt. 3-15 (docket of Ninth Circuit case initiated Feb. 4, 2013).

[23] Dkt. 8-4 at 2.

[24] Dkt. 8-6 at 1.

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 7 of 19

On Apr. 13, 2016, the Ninth Circuit considered Gladden's Dec. 2, 2013 petition for review of Dr. Tilton's Mar. 13, 2013 withdrawal of authorization and dismissed it as untimely since it was filed more than sixty days after the Mar. 13, 2013 order and without reasonable grounds for the delay.[25] The Ninth Circuit denied review of Dr. Tilton's Dec. 4, 2012 and Jan. 9, 2013 decisions for lack of jurisdiction. The Ninth Circuit determined Gladden failed to exhaust his administrative remedies because the claims should have been brought to NTSB, not to the Ninth Circuit.[26]

On Jan. 4, 2017, Gladden's July 19, 2016 application for airman medical certification was denied by David M. O'Brien, M.D., M.P.H. for "a personality disorder severe enough to have repeatedly manifested itself by overt acts." Gladden was directed to request reconsideration to the Federal Air Surgeon within sixty days.[27]

Defendants' motion to reconsider and motion to dismiss and Plaintiff's motion to deny Fonstad representation of all of the Defendants, request for extension to file reply, and request for expedited consideration are now ripe for consideration. The Court addresses each in turn.

### III. DEFENDANT'S MOTION FOR RECONSIDERATION

On September 7, 2017, Defendants filed a motion to dismiss all claims. Gladden filed a response to this motion at docket 11 and an amended response in opposition at docket 14.[28] On

---

[25] Dkt. 8-5 at 1–2.

[26] *Id.* at 2.

[27] Dkt. 3-18 at 1.

[28] Although listed at docket 14, the amended response was filed by Gladden on October 5, 2017, prior to the Court's October 10, 2017 order at docket 13, and was not the additional response discussed in that order.

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 8 of 19

October 10, 2017, the Court issued an order and warning notice at docket 13, explaining that Defendants' motion to dismiss at docket 8 must be construed as a motion for summary judgment and warning Gladden of the consequences of a successful motion for summary judgment. The Court gave Gladden twenty-one days from the date of the order to file any additional response to the motion at docket 8. On October 18, 2017, before Gladden filed his additional response, Defendants filed a reply at docket 16. Gladden then filed a response in opposition to summary judgment on October 31, 2017. In its order on November 8, 2017 at docket 19, the Court struck the Defendants' reply. On November 9, 2017, Defendants filed a motion for reconsideration of the Court's orders at dockets 13 and 19.

A. Defendants' motion for reconsideration of the Court's order at docket 13

In its motion for reconsideration of the Court's orders at docket 13, Defendants' position is that the Court should apply Rule 12(b)(6) when considering whether the Plaintiff failed to exhaust his administrative remedies[29] and Rule 12(b)(1) when considering Defendants' argument that the Court lacks jurisdiction to hear Gladden's claims.[30]

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances."[31] "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3)

---

[29] Dkt. 20 at 2–3 (referencing Dkt. 8 at 11).

[30] *Id.* at 3 (referencing Dkt. 8 at 13; *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (A party may make a jurisdictional challenge either on the face of the pleadings or by presenting extrinsic evidence); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (where a party presents extrinsic evidence, the challenge is factual, and a court may consider this evidence and need not presume the truth of the allegations in the complaint)).

[31] *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 9 of 19

if there is an intervening change in controlling law."[32] "Clear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed."[33]

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion."[34] Federal Rule of Civil Procedure 12(d) directs, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[35] However, in ruling on a 12(b)(6) motion, a court may consider extrinsic evidence physically attached to the complaint "which is properly submitted as part of the complaint" or "documents on which the complaint 'necessarily relies' and whose 'authenticity . . . is not contested,'" and "matters of public record."[36] A court may consider extrinsic evidence in deciding a jurisdictional attack in a 12(b)(1) motion if the moving party converts the motion "into a factual motion by presenting affidavits or other evidence properly brought before the court," as the opposing party "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject

---

[32] *School Dist. No. 1J Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[33] *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

[34] *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

[35] *Quoting* Fed. R. Civ. P. 12(d).

[36] *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("Public records" include the "records and reports of administrative bodies."); *accord Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

matter jurisdication."[37]  However, the Ninth Circuit has also held that a "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."[38]  Further, jurisdiction and the merits of an action are considered intertwined when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits."[39]

Gladden did not dispute any of the facts Defendants asked the Court to take judicial notice of.[40]  At the same time, neither side is prejudiced by construing the motion at docket 8 as a motion for summary judgment.  The Court gave Gladden not only the opportunity to challenge the existence of the unsigned "Order Granting Administrator's Motion to Dismiss Petition for Review" by the NTSB, at docket 8-1, but also the language included therein.  As explained in greater detail below, Gladden's constitutional challenges to the language used in the FAA denials are relevant in determining whether or not this Court has jurisdiction.

Thus, the Court **DENIES** this part of the motion for reconsideration at docket 20. Accordingly, the Court continues to construe, and addresses below, Defendants' motion at docket 8 as a motion for summary judgment.

---

[37] *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

[38] *Safe Air for Everyone* at 1040 (internal citations omitted).

[39] *Id.* (In *Safe Air for Everyone,* the Ninth Circuit held that the district court's dismissal for lack of subject matter jurisdiction under 12(b)(1) was error as the provision of RCRA under which Safe Air filed its claim provided the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.  The Court then reviewed the district court order as a grant of summary judgment.)

[40] *See* Dkt. 18 at 7–13 (Plaintiff's identification of material facts at issue).

B. <u>Defendant's motion for reconsideration of the Court's order at docket 19</u>

At docket 20, Defendants also ask that the Court reconsider its order at docket 19, which struck Defendants' reply at docket 16. The Court construed Defendants' reply at docket 16 as not so much a reply to Plaintiff's response(s), but a motion for reconsideration of the Court's order at docket 13, which gave Plaintiff notice and additional time to respond to Defendants' motion to dismiss construed as a motion for summary judgment.[41]

The Court now understands why Defendants filed a reply (at docket 16) within fourteen days of Plaintiff's amended response (at docket 14), regardless of that response at docket 14 being filed prior to the Court's order at docket 13, which gave Plaintiff more time to file a response with the motion construed as a motion for summary judgment.[42] The Court should have given clearer instructions so that Defendants knew if nothing additional was filed by Plaintiff within the twenty-one days following the order at docket 13, Defendants could still then file a reply.

When Gladden filed an additional response within the twenty-one days following the Court's order, Defendants opted to not file an additional reply because Gladden's third responsive filing did not address any new issues.[43] The Court then struck the reply Defendants were relying

---

[41] *See* Dkt. 19 at 2 ("Moreover, Defendants' filing, which primarily challenged the Court's conclusion that the motion at docket 8 should be construed as a motion for summary judgment rather than a motion to dismiss, far exceeded the permissible scope of a reply, which "must be restricted to rebuttal of factual and legal arguments raised in the opposition.")

[42] Dkt. 20 at 5 ("Defendants did not know if Gladden intended to file a further response after the Court issued its order at Docket 13. Out of an abundance of caution, Defendants calculated their deadline —14 days after a response [Dkt. 13 at 4] — from the date of Gladden' second response."). The numbering of dockets in this portion of the record is not chronological. *See* Dkt. 14 (filed Oct. 5); Dkt. 13 (filed Oct. 10); Dkt. 16 (filed Oct. 18).

[43] Dkt. 20 at 5 ("While Gladden later filed a third response (after the October 19 reply deadline that Defendants had conservatively calculated) [Dkt. 18], it did not address any new issues and Defendants did not intend to file a further reply.").

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 12 of 19

on. The Court now realizes that the Defendants did not know during the majority of the time they had to file a second reply, that the Court would strike their previous reply at docket 16, which they were relying on in choosing not to file a second reply.[44] Given this timing, and that striking the filing at docket 16 left Defendants without a reply, the Court finds this portion of its order at docket 19 to be manifestly unjust. Accordingly, this portion of Defendants' motion for reconsideration is **GRANTED** and the court reverses its order to strike the reply at docket 16.

## IV. MOTION TO DISMISS

Defendants make several arguments as to why this case should be dismissed with prejudice: failure to exhaust administrative remedies, sovereign immunity, qualified immunity, statute of limitations, and lack of subject-matter jurisdiction.[45] The Court finds a culmination of the first and the last of these to be dispositive, and for the reasons provided in more detail below, therefore **GRANTS** the motion at docket 8. The Court does not reach the merits of Defendants' alternative arguments here.

### A. Federal Aviation Act

To ensure pilots are physically able to perform their duties, 14 C.F.R. § 61.3(c) requires that a pilot hold a medical certificate in addition to a pilot certificate.[46] The Administrator of the Federal Aviation Administration (FAA) has the authority to issue these certificates to pilots who are "qualified for, and physically able to perform the duties related to [their] position."[47] The

---

[44] *See* Dkt. 19 (order striking Defendants' reply issued Nov. 8. 2017, six days before Defendants' time expired to file another reply to Plaintiff's Oct. 31, 2017 response at Dkt. 18).

[45] Dkt. 8 at 2.

[46] *See id.*; *see also* 14 C.F.R. § 61.3(a).

[47] *Quoting* 49 U.S.C. § 44703(a)).

Administrator delegates his/her authority to issue or deny medical certificates under 49 U.S.C. § 44703 to the Federal Air Surgeon and his/her representatives.[48]

Congress has created a process for generally appealing adverse medical certificate determinations. First, the applicant may seek reconsideration from the FAA.[49] Then, if still aggrieved, the applicant may appeal the FAA's final determination to the National Transportation Safety Board (NTSB).[50] Then, if still aggrieved, the applicant may file a petition for review in a United States court of appeals in which the person resides or has his principal place of business.[51]

For a district court or a court of appeals to have jurisdiction over direct challenges, the FAA order at issue must be final, or fully exhausted.[52] 49 U.S.C. § 46110(a) & (c) preempt a U.S. district court's federal question jurisdiction by giving the United States courts of appeals exclusive jurisdiction over requests to "affirm, amend, modify, [or] set aside any part of the order" or remand to the FAA for further proceedings any part of an order issued by the FAA pursuant to the Federal Aviation Act.[53] As a result, U.S. district courts do not have jurisdiction over appeals that are "inescapably intertwined with a review of the procedures and merits surrounding the FAA's

---

[48] 14 C.F.R. § 67.407(a)&(b).

[49] 14 C.F.R. § 67.407(c).

[50] 49 U.S.C. § 44703(d)(1)&(2).

[51] 49 U.S.C. § 46110(a)&(c) (Court of Appeals has "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order").

[52] *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 735–36 (9th Cir. 2006) (citing *Air Cal. v. U.S. Dep't of Transp.*, 654 F.2d 616, 622 (9th Cir. 1981) & 5 U.S.C. § 704).

[53] *Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir. 1998) (citing *Clark v. Busey,* 959 F.2d 808, 811 (9th Cir. 1992) (district court lacked jurisdiction over claims against the FAA involving final orders subject to judicial review under the Federal Aviation Act)); *Americopters*, 441 F.3d at 735 (quoting 49 U.S.C. § 46110(c)).

order."[54] District courts do, however, have jurisdiction over an appeal that broadly challenges the constitutionality of an FAA's action if the agency's order did not address those challenges.[55]

B.  Analysis

Among other arguments, Defendants assert that the Court lacks jurisdiction to review the FAA decisions in this case. Specifically, Defendants assert that Gladden has not exhausted his administrative process and that this Court lacks subject-matter jurisdiction to hear his claims.[56] In response, Gladden can be liberally construed as attempting to define the issue before the Court in more broad, constitutional terms: Whether the FAA acted arbitrarily and/or in excess of its statutory authority by not defining a "personality disorder that is severe enough to have repeatedly manifested itself by overt acts," which has been the consistent basis for Gladden's medical certificate denials.[57]

1. *Administrative Process*

Final FAA orders do not exist for the December 4, 2012, January 9, 2013, and March 13, 2013 FAA determinations because Gladden did not exhaust his administrative remedies.[58] Instead of appealing the December 4, 2012 and January 9, 2013 Tilton decisions to the NTSB, Gladden

---

[54] *Id.* (citing *Mace v. Skinner,* 34 F.3d 854, 858 (9th Cir. 1994) (quoting *Green v. Brantley,* 981 F.2d 514, 521 (11th Cir. 1993))); *see also* 49 U.S.C. § 46110(a).

[55] *Crist*, 138 F.3d at 804 ("section 46110 permits jurisdiction in the district court to hear broad constitutional challenges only where the agency's order did not address those challenges").

[56] Dkt. 8 at 11–14.

[57] Dkt. 14 at 20–21. *But see* Dkt. 26 at 7 ("First there is no[t] a 'constitutional issue,' *id.* [sic] on the issues of the Medical Certificate it is limited strictly to "medical issues" clothed in 14 CFR § 67.207(a)(1) . . .").

[58] Dkt. 8-3 (Ninth Circuit's May 29, 2013 decision); Dkt. 8-5 (Ninth Circuit's April 13, 2016 decision).

3:17-cv-00043-TMB, *Gladden v. Berry, et al.*
Order of Dismissal
Page 15 of 19

petitioned the Ninth Circuit. Instead of requesting reconsideration of the March 13, 2013 decision, Gladden filed an emergency motion in the Ninth Circuit to vacate that decision.[59] Similarly, this Court finds a final order does not exist for Gladden's Jan. 4, 2017 initial determination denying his second application for airman medical certification as he did not seek reconsideration of the decision with the FAA.[60] Without a final FAA order, this Court is without jurisdiction over Gladden's direct challenges.[61]

### 2. *Subject Matter Jurisdiction*

The Defendants also assert that the Court lacks jurisdiction over Gladden's challenges to the FAA orders, regardless of whether he exhausted his administrative process as 49 U.S.C. § 46110(c) provides Courts of Appeal with "exclusive jurisdiction," preempting district courts' jurisdiction to entertain challenges to the FAA's final orders.[62] Gladden's arguments attempt to indirectly challenge the FAA's decisions by seeking relief in the form of damages.[63] In theory, a district court may decide a claim for damages because 49 U.S.C. § 46110 does not specifically grant the court of appeals jurisdiction over this form of relief.[64] In practice, however, courts have

---

[59] Dkt. 8-3 at 1; Dkt. 8-2 at 1–4.

[60] *See* Dkt. 3-18.

[61] *Americopters*, 441 F.3d at 735 (citing *Air Cal.,* 654 F.2d at 622 & 5 U.S.C. § 704).

[62] Dkt. 8 at 13 (citing *Crist v. Leippe,* 138 F.3d 801, 803 (9th Cir. 1998)).

[63] Dkt. 3 at 22 (asking for actual damages in the amount of three hundred thousand dollars; general and compensatory damages in amount to be determined later; special damages in the form of compensation for filing fees, mailing, and process fees; punitive damages in the sum of six million dollars; and all other relief as the Court deems appropriate).

[64] *Americopters*, 441 F.3d at 736 (*citing Mace,* 34 F.3d at 858 (noting that a claim for damages is not found in the precursor to 49 U.S.C. § 46110(c)); § 46110(c) (providing the court of appeals with exclusive jurisdiction to "affirm, amend, modify, or set aside any part of the order and [the power to] order the ... [FAA] Administrator to conduct further hearings")).

developed a body of case law that limits this by barring district courts from hearing a damages claim that is "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order."[65] "The collateral attack doctrine prevents plaintiffs from crafting constitutional tort claims either as a means of 'relitigat[ing] the merits of the previous administrative proceedings,' . . . or as a way of evading entirely established administrative procedures."[66]

While Gladden alleges that no one will define the specific meaning of the term, "personality disorder that is severe enough to have repeatedly manifested itself by overt acts,"[67] and that the vagueness of this standard[68] "can be deemed to be anything,"[69] an explanation for this denial of his medical certificate and what can be seen as his constitutional challenges has already been provided by the FAA.[70] Additionally, entertaining jurisdiction over Gladden's claims would be an impermissible collateral attack on his previous adjudications.[71]

Accordingly, this Court lacks jurisdiction for Gladden's direct and indirect challenges in this case and **GRANTS** the motion at docket 8.

---

[65] *Id.* (citing *Crist v. Leippe,* 138 F.3d 801, 803 (9th Cir. 1998) (internal quotation marks and citations omitted); *accord Tur v. FAA,* 104 F.3d 290, 292 (9th Cir. 1997)).

[66] *Americopters*, 441 F.3d at 736 (quoting *Tur v. FAA,* 104 F.3d 290, 292 (9th Cir. 1997); citing also *Green v. Brantley,* 981 F.2d 514, 517, 521 (11th Cir.1993) (holding that district court had no jurisdiction over *Bivens* claims challenging an FAA order where "neither [plaintiff] nor his attorney ... pursued the matter through any appeal to the FAA Administrator or otherwise")).

[67] Dkt. 3 at 7.

[68] Dkt. 3-3 at 1.

[69] Dkt. 3-2 at 1.

[70] *See* Dkt. 3-4 at 1; Dkt. 3-14 at 1. (previous agency determinations on the merits).

[71] *See Americopters* at 738; *see also Tur*, 104 F.3d at 292 (discussing when 49 U.S.C. § 46110 proscribes suit because it is directed at the merits of a previous adjudication).

## V. REMAINING MOTIONS

At docket 23, Gladden alleges that the attorney for the Defendants should not be able to represent all of the Defendants because "conflicts of interests" exist between the Defendants.[72] Gladden provides various citations but never explains what actual facts caused him to file this motion.[73] Gladden also does not explain why he has standing to raise this argument.[74]

In reply to the Defendants' response that no conflict exists and that Gladden lacks standing,[75] Gladden first asked that the Court wait while his paralegal researched these issues, and that, in the meantime, the Court review the Defendants' attorney-client consents to representation.[76] This motion at docket 25 is **GRANTED** in so far as the Court accepts and considers the late filing of a reply, found at docket 26, and its notice of errata, at docket 27.[77] Still, the Court does not find any reason to conclude that there is any basis in law or fact for the motion at docket 23, and therefore it is **DENIED.**

---

[72] Dkt. 23 at 2.

[73] *See* Local (Civil) Rule 7.1(a).

[74] *Belanus v. Clark*, 796 F.3d 1021, 1028 (9th Cir. 2015) ("Before addressing the merits of Belanus's arguments, we must determine whether he has standing to raise them. In other words, has he 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) (footnote and internal quotation marks and citations omitted); *see also Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir.2000) (en banc) (holding that issues presented must be "definite and concrete, not hypothetical or abstract"—that plaintiffs "face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," rather than an imaginary or speculative injury)).

[75] *See* Dkt. 24 at 1–5.

[76] Dkt. 25 at 1.

[77] The Court declines to review the Defendants' attorney-client consents because Gladden has not explained what the Court should be looking for.

**IT IS THEREFORE ORDERED:**

1. The Court **DENIES** the part of Defendants' "Motion for Reconsideration of Orders at Dockets 13 and 19" found at docket 20, which asks the Court to not construe the motion to dismiss at docket 8 as a motion for summary judgment.

2. The Court **GRANTS** the part of Defendants' "Motion for Reconsideration of Orders at Dockets 13 and 19" found at docket 20 which asks the Court to undo the striking of the filing at docket 16.

3. The Court **GRANTS** Defendants' "Motion to Dismiss All Claims Against All Defendants" at docket 8, based on this Court lacking jurisdiction.

4. The Court **DENIES** Plaintiff's "Motion To Deny Fonstad Representation of All of the Defendants" found at docket 23.

5. The motion for an extension at docket 25 is **GRANTED** in so far as the Court accepts and considers the late filing of a reply, found at docket 26, with its notice of errata, at docket 27.

6. The Court **GRANTS** the motion for expedited consideration at docket 28.

7. This case is **DISMISSED** and the Clerk of Court is directed to issue a judgment accordingly.

DATED this 8th day of August, 2018 at Anchorage, Alaska.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE